# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

JESSICA SIMON, an individual,

    Plaintiff,

v.

BAYADA HOME HEALTH CARE, INC., a Delaware non-profit corporation,

Defendant.

---

## COMPLAINT WITH REQUEST FOR JURY TRIAL

---

COMES NOW, the Plaintiff, Jessica Simon, by and through her attorney, Thomas H. Mitchiner, of Mitchiner Law, LLC, and submits her Complaint and Request for Jury Trial against Defendant, BAYADA Home Health Care, Inc., and states as follows:

### NATURE OF THE CASE

This is an employment discrimination case. BAYADA Home Health Care, Inc. [Bayada] discriminated against Jessica Simon by conditioning her religious exemption from a vaccine requirement on her agreeing to allow Bayada to limit her work assignments. Further, Bayada retaliated against Ms. Simon when she opposed this requirement. The discriminatory and retaliatory practices, based on Ms. Simon's religious beliefs, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.* [Title VII].

Mrs. Simon also asserts a state law claim against Bayada for invasion of privacy.

## JURISDICTION AND VENUE

1. Jurisdiction is asserted under 28 U.S.C. § 1331.

2. This Court has supplemental jurisdiction over Ms. Simon's state law claim pursuant to 28 U.S.C. § 1367.

3. This action is authorized and instituted according to Title VII.

4. The claims at issue arose in the state of Colorado.

5. All claims arose in the judicial district of this Court.

6. Venue is proper in this Court under 28 U.S.C. § 1391 (b) (c).

## PARTIES

7. Plaintiff Jessica Simon is a resident of the state of Colorado.

8. Ms. Simon most recently held a Registered Nurse position with Bayada.

9. Defendant Bayada provides health care services to clients in their homes and other facilities.

10. Bayada's services include Adult Care and Medicare-Certified Visits, Adult and Private Duty Nursing, Autism and ABA Services, Habilitation, Hospice, Partners, Pediatrics, Personal Care and Companionship, and Staffing.

11. Bayada is a Delaware non-profit corporation authorized to conduct business in Colorado, with its principal place of business in Colorado located at 8670 Wolff Ct., Westminster, CO 80031.

12. Ms. Simon is an employee under Title VII.

13. Bayada is an employer under Title VII.

## ADMINISTRATIVE PROCEDURES

14. Before filing this action, Ms. Simon timely, properly, and lawfully exhausted all required administrative remedies.

15. Ms. Simon filed a timely charge of religious discrimination and retaliation, in violation of Title VII, with the Equal Employment Opportunity Commission [EEOC]. [EEOC Charge No. 541-2022-00088].

16. On July 27, 2023, the EEOC mailed a Notice of Right to Sue letter to Ms. Simon.

17. This action is timely filed because it is filed within ninety days of Ms. Simon's receipt of the Notice of Right to Sue letter issued by the EEOC.

## BACKGROUND

18. Around March 2020, the COVID-19 pandemic arrived in Colorado.

19. Ms. Simon practices Messianic Judaism.

20. In December 2020, a COVID-19 vaccine became available.

21. Bayada hired Ms. Simon as a full-time Registered Nurse in December 2020.

22. Bayada hired Ms. Simon to work as a Registered Nurse with patients in their homes.

23. Ms. Simon was qualified to work as a Registered Nurse and always performed her duties satisfactorily.

24. Bayada never disciplined Ms. Simon for any reason. In fact, Bayada often gave Ms. Simon "Bayada Bucks" for going above and beyond her job duties.

25. Ms. Simon was a member of Bayada's Employee Satisfaction Committee.

26. Before Ms. Simon started working for Bayada, it wanted her to get the influenza vaccine.

27. Ms. Simon is allergic to the influenza vaccine.

28. Ms. Simon provided Bayada with a note from her doctor stating that she was allergic to the vaccine and, therefore, she could not receive it.

29. Bayada did not require Ms. Simon to get the influenza vaccine.

30. Bayada exempted Ms. Simon from the influenza vaccine requirement without having her apply for an exemption or sign any documents about her not receiving the vaccine.

31. Around February/March 2021, Clinical Nurse Manager Denise Lester asked Ms. Simon to come work on the facility side where her patients would be living in facilities.

32. Ms. Simon worked at several of the facilities Bayada worked with, either as part of her regular work assignments or when covering for other Bayada nurses.

33. Each facility had different policies regarding COVID-19 precautions for healthcare workers entering the facility.

34. Some facilities required that Ms. Simon have tested negative for COVID-19 within seven days, some required her to have a negative test within 72 hours of entering the facility, and some required her to take a rapid test and to be negative right before she entered the facility.

35. To keep up with the different requirements, Ms. Simon tested herself for COVID-19 every Tuesday and Friday.

36. In late August/early September, Ms. Simon took paid time off.

37. During this time, Ms. Simon regularly checked her work email.

38. On August 30, 2021, Colorado issued a rule requiring that all healthcare workers receive their first dose of the COVID-19 vaccine by September 30, 2021, and to receive the second dose by October 31, 2021.

39. The rule allowed healthcare workers to apply for and receive exemptions to the vaccine mandate based on medical or religious reasons.

40. Healthcare workers who received a medical or religious exemption could still work in healthcare if they performed weekly testing and followed the most recent version of Colorado's Personal Protective Equipment [PPE] rules.

41. On August 31, 2021, Susanne Anderson, the Director of Bayada's Westminster office, emailed Ms. Simon and two other Bayada employees, informing them that Colorado would issue a vaccine mandate and asking all the employees to reply to everyone about their vaccination status.

42. Ms. Simon responded only to Ms. Anderson, letting her know she had not had the COVID-19 vaccine.

43. Ms. Simon did not share her vaccination status with her patients.

44. Ms. Simon only told the person training her in January 2021 and the employees of Bayada who needed the information to report to Colorado about her vaccination status.

45. Because of the paid time off taken by Ms. Simon and the holiday, other nurses covered Ms. Simon's patients.

46. When Ms. Simon returned to work in September 2021, multiple patients were removed from her schedule.

47. Ms. Simon asked Ms. Anderson about the patients being taken off her schedule and was told that the patients had requested a different nurse.

48. Ms. Simon thought this was suspicious because she had a great relationship with the patients. Ms. Simon later learned that the patients had requested a different nurse because they wanted to work with a vaccinated nurse.

49. The patients could have only learned about Ms. Simon's vaccination status from Bayada.

50. After learning that patients had been removed from her schedule, Ms. Simon asked Ms. Anderson and Debra Begs, the Registered Nurse Manager, if a nurse had disclosed her vaccination status to one of her patients. Ms. Begs told Ms. Simon she would investigate.

51. About a week later, Ms. Begs emailed Ms. Simon to let her know that she had investigated and did not find that any nurse had disclosed Ms. Simon's vaccination status.

52. Ms. Simon never again worked with the patients taken away from her after she returned from paid time off.

53. Later in September, at a nurse's meeting, a nurse asked Ms. Anderson to stop sending unvaccinated nurses to certain facilities.

54. Ms. Simon replied that she believed that would violate the law.

55. Ms. Anderson agreed and said she could not do that because it would be illegal.

56. The nurse said she was harassed because she was with Bayada, and Bayada still had unvaccinated nurses.

57. After the meeting, Bayada stopped asking Ms. Simon to cover multiple facilities.

58. On September 17, Ms. Anderson told Ms. Simon that she had forms for employees to request medical and religious exemptions from Colorado's vaccine mandate.

59. Ms. Simon told Ms. Anderson that she would apply for a religious exemption.

60. On September 28, Ms. Simon sent Ms. Anderson a picture of documents supporting her religious exemption. She told her she would give Ms. Anderson a copy when she returned to the office.

61. Ms. Simon also asked Ms. Anderson if Bayada would issue a vaccine mandate.

62. In reply, Ms. Anderson told Ms. Simon that she had sent her exemption documentation to Susan Milewski, who worked on Bayada's COVID-19 Exemption Team.

63. Ms. Simon asked Ms. Anderson if she thought Bayada would grant the exemption.

64. Ms. Anderson indicated that if Ms. Simon followed Colorado policies for unvaccinated healthcare workers, Bayada probably would not have a problem granting the exemption.

65. On October 4, Ms. Simon went to Bayada's Westminster office. She received the form Bayada would use to determine if it could grant Ms. Simon a religious exemption from Colorado's vaccine mandate.

66. The form required Ms. Simon, among other things, to list why her sincerely held religious beliefs prevented her from taking the vaccine and explain the steps she would take to ensure that she did not spread COVID-19.

67. In addition, the form told Ms. Simon that if Bayada granted the exemption, she had to agree to allow it to limit her work assignments due to her unvaccinated status.

68. The form essentially asked Ms. Simon to agree to allow Bayada to discriminate against her based on her religious beliefs.

69. Bayada would limit her work assignments even though Colorado stated that healthcare workers with religious exemptions could work if they followed the PPE guidelines and were tested weekly. And even though vaccinated nurses could still catch and spread COVID-19 if they did not follow the PPE guidelines.

70. Ms. Simon understood this language to mean that Bayada would alter the terms and conditions of her position by limiting her work assignments because of her religious beliefs.

71. On October 6, Ms. Simon brought the religious exemption form to Bayada's office.

72. When she was in the office, the Scheduler, Erica Martinez, informed Ms. Simon that another patient had been removed from her rotation.

73. Ms. Simon asked why, and Ms. Martinez told her it was "due to her unvaccinated status."

74. After this conversation, Ms. Simon talked with Ms. Anderson about her religious exemption and the fact that Bayada would require her to agree to allow it to limit her assignments for Bayada to grant the exemption.

75. Ms. Simon expressed to Ms. Anderson that she would not agree to allow Bayada to discriminate against her, and she refused to sign the document.

76. Ms. Anderson told Ms. Simon that Bayada might not let her work because of her refusal but that Ms. Anderson would let Ms. Simon know what Bayada would do later.

77. The next day, Ms. Anderson asked Ms. Simon if she could apply for a medical exemption. In response, Ms. Simon said she would not because her primary objection to the vaccine was religious and not medical.

78. Ms. Simon later asked Ms. Anderson when she would know how Bayada would handle her refusal to sign the exemption form.

79. On October 11, Ms. Martinez emailed Ms. Simon to let her know that Bayada had not made a final decision but that she should plan to coordinate with a nurse to take over her patients.

80. Later that day, Ms. Anderson informed all staff, via email that after patients had received a letter from Bayada saying that it would honor its employee's wishes

regarding vaccination, many patients had requested to only work with vaccinated employees.

81. Ms. Anderson asked the vaccinated employees if they would consent to Bayada disclosing their vaccination status.

82. After that email, Ms. Anderson called Ms. Simon and told her that she talked to the COVID-19 Exemption Team about her objections and that the team had indicated that because of the documentation they have on her, it could probably grant the exemption without having her agree to all the terms on the form.

83. Later, Ms. Anderson called Ms. Simon and asked her to sign the form in its entirety, to which Ms. Simon objected. Ms. Anderson told her that because she refused to sign the document, Bayada would put her on unpaid leave.

84. Ms. Anderson then forwarded Ms. Simon an email chain with the COVID-19 Exemption Team concerning Ms. Simon's request for an exemption.

85. The email said it would grant Ms. Simon's exemption if she signed the form but left sections blank.

86. The email did not say which sections Ms. Simon could leave blank.

87. After reading the email, Ms. Simon reached out to the nurse who would take over her patients and informed her about them, as previously directed by Ms. Martinez.

88. From the email and her conversation with Ms. Anderson, Ms. Simon knew that if she did not submit the form on the 11th, she would be on unpaid leave starting October 12, 2021.

89. From October 12 to October 18, Ms. Simon asked questions of Ms. Anderson about her leave and exemption request but did not receive any responses.

90. On October 19, Marlon Yoder, Bayada's Regional Manager, contacted Ms. Simon to ask if she needed any clarification on the religious exemption issue.

91. The next day, Ms. Simon responded to Mr. Yoder, telling him that she only wanted clarification on why it had taken so long for Bayada to decide how to handle her religious exemption request and her refusal to agree to allow Bayada to discriminate against her.

92. Mr. Yoder indicated that he would seek clarification on her questions and get back to her, but he never did.

93. On October 27, Ms. Anderson emailed Ms. Simon and told her that Bayada would grant the exemption without Ms. Simon agreeing to the entire form.

94. Ms. Simon could get the exemption without agreeing to (1) allow Bayada to get supporting documentation from her religious leader, (2) provide records to support her prior requests or exemptions from other vaccines, and (3) hold Bayada harmless from any claims for their inability to accommodate her request due to hardship, direct threat, or state/local regulatory reasons.

95. Bayada did not address Ms. Simon's main objection to signing the form.

96. Bayada would still require her to agree that if it granted the religious exemption, Bayada could limit her work assignments.

97. In response to the offer, Ms. Simon told Ms. Anderson she was not signing the form because line three states that her work assignments may be limited due to her unvaccinated status.

98. Further, Ms. Simon told Ms. Anderson that Bayada has stated they will allow clients to request to be treated only by a vaccinated staff member. That decision could essentially leave her with no visits.

99. Ms. Simon went on to say that she refuses to sign a form that allows Bayada to openly discriminate against her for being unvaccinated due to her religious beliefs.

100. On October 28, Bayada emailed Ms. Simon and informed her it did not grant her exemption and placed her on unpaid leave, which resulted in her termination.

## First Claim for Relief
(Title VII – Religious Discrimination)

101. The foregoing allegations are realleged and incorporated by reference.

102. Title VII applies to Ms. Simon and Bayada.

103. Title VII makes it unlawful for covered employers to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of such individual's religion.

104. Bayada discriminated against Ms. Simon because of her religious beliefs by intentionally depriving Ms. Simon of her right to be free from religious discrimination in the performance, enjoyment, continuation, rights, benefits, and privileges of her employment relationship with Bayada.

105. Bayada discriminated against Ms. Simon because of her religious beliefs: (a) with respect to her terms, conditions, or privileges of employment; and/or (b) by limiting, segregating, or classifying Ms. Simon in a way that deprived or tended to deprive, Ms. Simon of employment opportunities, or otherwise adversely affect her status as an employee.

106. Further, Bayada discriminated against Ms. Simon because of her religious beliefs by informing clients of the vaccination status of its employees and allowing its clients to choose what Bayada employees the client wanted to work with.

107. In August 2021, Colorado mandated that all healthcare workers in the state be vaccinated against COVID-19.

108. Healthcare workers who had sincerely held religious objections to the vaccine were exempted from the vaccine mandate.

109. To work in healthcare, these workers had to test every week and follow PPE guidelines.

110. Bayada, in compliance with the state mandate, required all its employees to be vaccinated or to apply for and receive an exemption.

111. Ms. Simon's bona fide religious belief conflicted with the vaccine mandate.

112. Ms. Simon informed Bayada of her bona fide religious beliefs and requested an exemption from the vaccine mandate.

113. To receive a religious exemption, Ms. Simon had to agree to allow Bayada to limit her assignments because of her religious exemption from the vaccine mandate.

114. Limiting Ms. Simon's assignments because of her religious objection to the vaccine would alter the terms and conditions of her employment.

115. Bayada put Ms. Simon in a lose-lose situation. If she signed the form, she would be granted the exemption, but Bayada most likely limit her assignments to comply with its client's requests only to be treated by a vaccinated employee.

116. On the other hand, she could refuse to sign the form, be placed on unpaid leave, and ultimately be terminated. All because her religious beliefs prevented her from getting the vaccine.

117. Although Bayada made it clear to Ms. Simon that it would allow her to receive the exemption without agreeing to all the terms on the form, it still required Ms. Simon to agree that it could limit her work assignments.

118. Bayada had told Ms. Simon that many of its patients had asked to work with a provider who had been vaccinated.

119. Bayada told Ms. Simon that it would comply with this request.

120. By complying with this request, Bayada allowed its clients to discriminate against employees based on their religious beliefs.

121. Because Ms. Simon refused to agree to allow Bayada to discriminate against her because of her religious beliefs, Bayada terminated her.

122. Bayada acted willfully, with malice or reckless indifference to the rights of Ms. Simon.

123. As a result of Bayada's actions, Ms. Simon suffered damages in an amount to be proved at trial.

## Second Claim for Relief
(Title VII – Retaliation)

124. The foregoing allegations are realleged and incorporated by reference.

125. Ms. Simon asserts a claim of unlawful retaliation in violation of Title VII.

126. Title VII prohibits Bayada from retaliating against Ms. Simon because she engaged in activities protected by Title VII.

127. Title VII prohibits any person from retaliating against an individual who has opposed any act or practice made unlawful by Title VII or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

128. Title VII also protects the informal assertion of rights.

129. Ms. Simon engaged in protected activities under Title VII by repeatedly objecting to Bayada's policies regarding what Bayada required of her to receive the religious exemption.

130. Ms. Simon's first act of protected activity occurred in September 2021.

131. Ms. Simon's last act of protected activity occurred on October 28, 2021.

132. Bayada terminated Ms. Simon on October 28, 2021.

133. Bayada knew of Ms. Simon's protected Title VII activities.

134. Bayada engaged in an intentional, calculated, and purposeful campaign of unlawful retaliation against Ms. Simon.

135. Bayada's intentional, unlawful retaliation was created, perpetrated, and/or tolerated by its officials, managers, and employees.

136. Bayada, contemporaneously with, and/or immediately after, Ms. Simon's repeated, protected activities, took actions against her that a reasonable employee would have found materially adverse, namely termination and being placed on unpaid leave.

137. Bayada retaliated against Ms. Simon by subjecting her to a series of intentional, cumulative, and increasingly severe, materially adverse, and discriminatory actions.

138. A causal connection and/or a but-for causation exists between Ms. Simon's protected activities and the unlawful materially adverse employment actions Bayada took against Ms. Simon.

139. Bayada's treatment of Ms. Simon, considered in its totality and in a cumulative manner, as stated in the above paragraphs of this claim and Complaint, constitutes unlawful, direct, intentional, materially adverse, retaliatory, and discriminatory actions prohibited by Title VII.

140. As a result of Bayada's actions, Ms. Simon suffered damages in an amount to be proved at trial.

**Third Claim for Relief**
(Invasion of Privacy)

141. The foregoing allegations are realleged and incorporated by reference.

142. Bayada made Ms. Simon's vaccination status public or initiated the process whereby Ms. Simon's vaccination status became known to a large number of persons.

143. Ms. Simon only disclosed her vaccination status to her trainer and Bayada employees, who needed to know her vaccination status so that she could be exempt from the vaccination requirement.

144. A person's private health information includes their vaccination status.

145. A person's decision to get any vaccine, let alone the COVID-19 vaccine, is deeply personal and private.

146. A reasonable person would be offended by the disclosure of their vaccine status to a large number of people who have no reason to know about the vaccine status of the person.

147. When Bayada caused or initiated the events that caused Ms. Simon's vaccination status to become public, it knew this was private information it should not disclose.

148. Ms. Simon did not receive assignments because Bayada told patients she was not vaccinated.

149. Because Ms. Simon did not receive these assignments, she lost money.

150. Bayada's disclosure of Ms. Simon's private information caused her to lose the assignments and money.

151. As a result of Bayada's actions, Ms. Simon suffered damages in an amount to be proved at trial.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Jessica Simon respectfully prays for a judgment to be entered against BAYADA Home Health Care, Inc. as follows:

A. Against BAYADA Home Health Care, Inc. finding that it discriminated against Jessica Simon in violation of the Title VII;

B. Against BAYADA Home Health Care, Inc. finding that it retaliated against Jessica Simon in violation of the Title VII;

C. Against BAYADA Home Health Care, Inc. for back pay, loss of benefits, and all economic benefits associated with Jessica Simon's employment under Title VII, as allowed by law;

D. Against BAYADA Home Health Care, Inc. for front pay under Title VII, as permitted by law;

E. A finding that BAYADA Home Health Care, Inc. willfully violated Title VII and for compensatory and punitive damages available to Jessica Simon, under Title VII, as allowed by law;

F. Against BAYADA Home Health Care, Inc. finding that it invaded Jessica Simon's privacy;

G. Against BAYADA Home Health Care, Inc. for all money lost due to its invasion of Jessica Simon's privacy;

H. Against BAYADA Home Health Care, Inc. for attorney fees and costs available to Jessica Simon under Title VII, as allowed by law;

I. To award Jessica Simon all other legal and equitable relief to which Jessica Simon is entitled pursuant to any law that this Court deems just, equitable, and proper.

## JURY TRIAL REQUEST

Pursuant to Fed. R. Civ. P. 38 (a) (b) (c), and all applicable laws providing for a right to trial by jury, Jessica Simon seeks a jury trial of all claims and issues in this action. Respectfully submitted on October 18, 2023

By:

Mitchiner Law, LLC

*/s/ Thomas H. Mitchiner*
Thomas H. Mitchiner
1240 S. Parker Rd. Suite 103
Denver, CO 80231
Phone: 720-538-0371
E-mail: tmitchiner@mitchinerlawllc.com

Attorney for Jessica Simon

Address of Plaintiff:

10643 Eudora Way, Thornton, CO 80233